UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WILLIAM PLUMLEY,

                Plaintiff,

v.                                   5:15-CV-1229
                                   (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                       OF COUNSEL:

STANELY LAW OFFICES, LLP       STEPHANIE VISCELLI, ESQ.
  Counsel for Plaintiff
215 Burnet Ave
Syracuse, NY 13203

U.S. SOCIAL SECURITY ADMIN.     GRAHAM MORRISON, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## <u>REPORT and RECOMMENDATION</u>

      This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 21.)  This case has proceeded in accordance with General

Order 18.

      Currently before the Court, in this Social Security action filed by William Plumley

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 12, 16.)  For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on August 18, 1969.  (T. 153.)  He completed the 8th grade.  (T. 185.)  Generally, Plaintiff's alleged disability consists of degenerative disc disease and a heart condition.  (T. 184.)  His alleged disability onset date is March 29, 2012. (T. 48.) His date last insured is September 30, 2013.  (*Id.*)  He previously worked as a cook and mover.  (T. 175.)

### B.    Procedural History

On March 30, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act.  (T. 48.)  Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On April 30, 2014, Plaintiff appeared before the ALJ, John P. Ramos.  (T. 27-47.)  On May 8, 2014, ALJ Ramos issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 9-26.)  On September 23, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 2-7.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 14-22.)  First, the ALJ found that Plaintiff met the insured status

requirements through September 20, 2013 and Plaintiff had not engaged in substantial

gainful activity since March 29, 2012.  (T. 14.)  Second, the ALJ found that Plaintiff had

the severe impairments of lumbar spine degenerative disc disease, borderline

intellectual functioning, and alcohol abuse.  (*Id.*)  Third, the ALJ found that Plaintiff did

not have an impairment that meets or medically equals one of the listed impairments

located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 15-17.)  Fourth, the ALJ

found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary

work with additional non-exertional mental limitations.  (T. 17.)[1]  The ALJ determined

that Plaintiff retained the ability to understand and follow simple instructions and

directions; perform simple tasks with supervision and independently; maintain

attention/concentration for simple tasks; regularly attend to a routine and maintain a

schedule; could relate to and interact with others to the extent necessary to carry out

simple tasks; and could handle reasonable levels of simple work-related stress in that

he could make decisions directly related to the performance of simple work and handle

usual work place changes and interactions associated with simple work.  (*Id.*)  Fifth, the

ALJ determined that Plaintiff was incapable of performing his past relevant work;

however, there were jobs that existed in significant numbers in the national economy

Plaintiff could perform.  (T. 20-21.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

---

[1]    Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. §§ 404.1567(a), 416.967(a).

Plaintiff makes three separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the ALJ did not evaluate the medical opinion of the treating physician according to the relevant legal standards and as a result the RFC assessment was the product of legal error and not support by substantial evidence. (Dkt. No. 12 at 9-12 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ did not evaluate Plaintiff's subjective statements in accordance with the relevant legal standards. (*Id.* at 12-14.) Third, and lastly, Plaintiff argues that the ALJ should have consulted a vocational expert ("VE") because Plaintiff's non-exertional limitations were more than negligible. (*Id.* at 14-15.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues that the ALJ properly evaluated the medical evidence in the record. (Dkt. No. 16 at 4-6 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ properly considered Plaintiff's subjective complaints. (*Id.* at 6-7.) Third, and lastly, Defendant argues that the ALJ properly determined that Plaintiff could work. (*Id.* at 7-8.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether

the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. The ALJ's Evaluation of the Treating Physician's Opinion

A plaintiff's RFC is the most he can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009). In determining Plaintiff's RFC, the ALJ can consider a variety of factors, including a treating physician's or examining physician's observations of limitations, Plaintiff's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a).

The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) .

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2)(i)-(iv), 416.927(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)).

Plaintiff received treatment for his low back and leg pain from Suehun Ho, M.D. Plaintiff began treatment with Dr. Ho in March of 2013 and ceased treatment in September of 2013. (T. 294.) On March 21, 2013, Dr. Ho reviewed Plaintiff's objective medical imaging. (T. 333.) She noted that X-rays dated January 7, 2012 indicated

decreased disc height at L5-S1 and no instability with flexion/extension views. (*Id.*) Dr. Ho also reviewed Plaintiff's December 5, 2012 MRI which indicated a disc bulge asymmetric to the left which abutted the descending left S1 nerve root. (*Id.*) On examination, Plaintiff was in no acute distress, had a flexed forward posture, had pain on palpation over left lumbar paraspinals, positive lumbar facet challenge to the left, and positive seated straight leg raise on the left. (T. 333-334.) Dr. Ho also observed that Plaintiff had full strength in his lower extremities and intact sensation. (T. 334.) Dr. Ho encouraged Plaintiff to continue a home exercise program and recommended he receive an injection. (T. 334.) Plaintiff received an injection on April 9, 2013. (T. 325.)

Dr. Ho met with Plaintiff again on April 15, 2013. (T. 325.) She noted that Plaintiff received "80-90% benefit for the pain in his legs" with the injection. (*Id.*) Plaintiff informed Dr. Ho that numbness worsened with standing/walking more than five to 10 minutes and was better with sitting. (*Id.*) On examination, Dr. Ho noted Plaintiff had a flexed forward posture, no pain on palpation, negative seated leg raise bilaterally, and denied pain with passive range of motion of bilateral hips. (T. 327.) Dr. Ho noted Plaintiff had full strength and intact sensation. (*Id.*) Dr. Ho again encouraged exercise, aqua therapy, and did not believe imaging would yield any further information. (*Id.*)

On May 5, 2013, Plaintiff informed Dr. Ho that the relief he received from the injection lasted one and a half weeks. (T. 319.) On examination, Dr. Ho observed that Plaintiff had a flexed forward posture, pain on light palpation over the left thoracolumbar paraspinals, positive lumbar facet challenge to the left, negative seated leg raise bilaterally, no pain on passive range of motion in hips, and was able to heel and toe

walk in the room with some difficulty due to pain.  (T. 320-321.)  Dr. Ho recommended medication and aqua therapy.  (T. 321.)

On July 11, 2013, Dr. Ho observed that Plaintiff was in no acute distress.  (T. 314.)  She further observed that he had a flexed forward posture, pain on light palpation over bilateral lumbar paraspinals and sacroiliac joints, positive lumbar facet challenge bilaterally, and negative seated straight leg raise bilaterally.  (*Id.*)  Plaintiff had full strength in his lower extremities and intact sensation.  (*Id.*)  During this visit Dr. Ho recommended that Plaintiff work with a pain psychologist due to his depression and anxiety and she prescribed an anti-depressant.  (*Id.*)

On September 5, 2013, Dr. Ho observed that Plaintiff was in no acute distress, he had a flexed forward posture, he had pain on palpation over bilateral lumbar paraspinals, he had negative seated straight leg raise bilaterally, and he had full strength and sensation in his lower extremities.  (T. 308.)

On all visits, Dr. Ho noted Plaintiff was independent in his activities of daily living ("ADLs").  (T. 305, 308, 311, 314, 318, 320, 324, 327, 331, 333.)  A medical examination with St. Joseph's Hospital on July 23, 2013, also noted Plaintiff was independent in his activities of daily living.  (T. 443.)

On March 28, 2014, six month after she last treated Plaintiff, Dr. Ho completed a medical source statement.  (T. 294-296.)  Dr. Ho listed lumbar spondylosis as Plaintiff's diagnosis and indicated his prognosis was poor.  (T. 294.)  She opined that Plaintiff was incapable of even "low stress" jobs due to his depression and anxiety.  (*Id.*)  Dr. Ho provided exertional limitations as well.  She opined that Plaintiff could walk one city block without severe pain or needing to rest.  (*Id.*)  She opined that Plaintiff could sit for

a total of 10 minutes at one time before needing to get up.  (*Id.*)  Dr. Ho opined that

Plaintiff could stand for a total of 10 minutes before needing to change position.  (*Id.*)

She opined that Plaintiff could sit for less than two hours in an eight hour work day and

stand/walk less than two hours in an eight hours work day.  (*Id.*)  She opined that

Plaintiff required an at will sit/stand option.  (*Id.*)

Dr. Ho opined that Plaintiff could occasionally lift and carry up to ten pounds;

rarely lift and carry 20 pounds; and never lift and carry 50 pounds.  (T. 295.)  Dr. Ho

stated Plaintiff could rarely: twist; stoop; crouch/squat; climb ladders; and climb stairs.

(*Id.*)  Dr. Ho indicated that Plaintiff would be absent more than four days per month and

pain/symptoms would frequently interfere with his attention and concentration.  (T. 296.)

Dr. Ho stated that Plaintiff had "ongoing depression/anxiety.  Unfortunately, he did not

show for his appointment with the psychologist, I am also no longer treating him as he

was seeking a 2nd opinion."  (*Id.*)

On May 4, 2012, Plaintiff underwent a consultative examination.  (T. 254-257.)

On examination, Robi Rosenfeld, D.O., noted Plaintiff was in no acute distress, had a

normal gait, could walk on heels and toes without difficulty, could squat 50%, had a

normal stance, used no assistive devices, needed no help changing for the exam, and

was able to get on and off the exam table and rise from a chair without difficulty.  (T.

255.)

Dr. Rosenfeld observed that Plaintiff had full range of motion in his cervical spine.

(T. 256.)  Dr. Rosenfeld noted Plaintiff's lumbar spine extension was 20 degrees, flexion

was 0 degrees, and lateral flexion 20 degree bilaterally.  (T. 256.)  He observed that

Plaintiff had straight leg raises 30 degrees bilaterally supine and full sitting with pain

down to the low back.  (T. 256.)  Dr. Rosenfeld reviewed X-rays and noted straightening of the lumbar lordosis and transitional L5 vertebra body.  (*Id.*)

In a medical source statement Dr. Rosenfeld opined that Plaintiff had "moderate restriction from heavy lifting, carrying, bending over, and squatting because of the degenerative disk disease of the lumbar spine."  (T. 257.)

Plaintiff received emergency treatment at St. Joseph's Hospital on March 19, 2012 for back pain.  (T. 378.)  A physical exam at that time revealed spinal tenderness, and intact forward flexion and extension with discomfort.  (*Id.*)  A physical examination performed on January 7, 2013, indicated that Plaintiff had a normal gait, intact sensation, and full strength in his lower extremities.  (T. 299.)  On examination Plaintiff had positive straight leg raise on the left.  (*Id.*)

 In assessing the medical evidence in the record, the ALJ afforded Dr. Ho's medical source statement "less evidentiary weight than [Dr. Rosenfeld's opinion]".  (T. 19.)  In support of his determination, the ALJ stated that Dr. Ho's conclusions were not consistent with clinical findings.  (*Id.*)  He stated that her opinion was not supported by her objective findings or by the findings of other providers in the record.  (*Id.*)  The ALJ also reasoned that Dr. Ho's opinion was entitled to less weight because it was written six months after she last treated Plaintiff.  (T. 20.)  Further, although Dr. Ho did not treat Plaintiff for his depression she provided limitations in her medical source statement based on his mental health.  (*Id.*)  Ultimately, the ALJ stated that his RFC determination was based on the medical opinion of Dr. Rosenfeld and Plaintiff's current work activity. (*Id.*)

Plaintiff essentially argues that the ALJ committed two errors in his assessment of Dr. Ho's medical opinion.  First, Plaintiff argues that, contrary to the ALJ's conclusion, significant clinical findings in the record supported Dr. Ho's opinion.  (Dkt. No. 12 at 11 [Pl.'s Mem. of Law].)  Second, Plaintiff argues that the ALJ failed to consider the regulatory factors because he failed to acknowledge that Dr. Ho was an orthopedic specialist and treated Plaintiff on multiple occasions.  (*Id.* at 11-12.)

The ALJ did not commit legal error in his assessment of Dr. Ho's opinion and further substantial evidence supported the limited weight that the ALJ attributed her opinion.  First, despite Plaintiff's assertion that Dr. Ho's treatment notations and the December MRI support his position, Plaintiff failed to show that no reasonable factfinder could have reached the ALJ's conclusion based on the evidence in the record.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

As cited by the ALJ, and outlined herein, although Dr. Ho's treatment notations revealed tenderness to palpation, Dr. Ho often observed negative straight leg raises, full strength, and intact sensation.  (T. 19.)  Therefore, the ALJ did not err in his conclusion that Dr. Ho's treatment notations did not support her medical source opinion and this constituted good reason for not affording her opinion controlling weight.  *See Camille v.*

*Colvin*, 652 F. App'x 25, 27 (2d Cir. 2016) (ALJ properly afforded treating physician little weight because physician's opinion conflicted with clinical notations).

Second, the ALJ reasoned that Dr. Ho's statement was entitled to less weight because the forms completed by Dr. Ho requested an explanation of opined limitations and Dr. Ho indicated various limitations were due to Plaintiff's depression and anxiety. (T. 294, 296.)  Dr. Ho did not treat Plaintiff for his mental impairments and instead referred him to a psychologist, whom Plaintiff failed to follow up with.  (T. 296.) Furthermore, Dr. Ho completed the medical source statement approximately six months after she ceased treating Plaintiff.  (T. 296.)  Therefore, the ALJ did not err in affording Dr. Ho's statement less weight were she based her opinion on medical conditions she did not treat for and her opinion was provided six months after she ceased treating Plaintiff.

Plaintiff argues that the ALJ erred when he failed to consider Dr. Ho's specialty in assessing her opinion.  (Dkt. No. 12 at 11-12 [Pl.'s Mem. of Law].)  Where an ALJ's reasoning and adherence to the Regulations is clear, he is not required to explicitly go through each and every factor of the Regulation.  *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527(c), the Court held that "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").  Further, specialization is but one factor to consider in the evaluation of opinion evidence.  *See* 20 C.F.R. §§ 404.1527(c)(2)(i)-(iv), 416.927(c)(2)(i)-(iv).

Here, although the ALJ did not specifically mention Dr. Ho's specialization in his decision, the ALJ's adherence to the Regulations was clear. The ALJ thoroughly discussed Dr. Ho's opinion and treatment notations, and other medical opinion evidence, in the record. (T. 19-20.) The ALJ reasoned that Dr. Ho's opinion was not consistent with clinical findings. (T. 19); *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ provided examples of evidence in the record which he determined were inconsistent with Dr. Ho's opinion, such as Dr. Rosenfeld's examination and opinion. (*Id.*); *see* 20 C.F.R. §§ 404.1527(c)(2)(iii), 416.927(c)(2)(iii). Therefore, the ALJ did not err in not affording controlling weight to Dr. Ho's opinion simply because she was an orthopedist.

Plaintiff outlined the legal standard directing that an ALJ may not substitute his own lay opinion for that of a medical opinion; however, Plaintiff does not appear to argue that the ALJ impermissibly did so here. However, the ALJ did not reject Dr. Ho's opinion notwithstanding the lack of a contrary medical opinion. *Balsamo v. Chater*, 142. F.3d 75, 81 ("[w]hile an ALJ is free ... to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him".). Here, Dr. Rosenfeld provided a contrary medical source opinion. The ALJ was permitted to consider Dr. Ho's treatment notes in weighing the opinions of Dr. Ho and Dr. Rosenfeld; and he was permitted to conclude that Dr. Rosenfeld's opinion was more reliable. *Camille*, 652 F. App'x at 28. Of note, Plaintiff does not argue that Dr. Rosenfeld's opinion does not, or cannot, constitute substantial evidence to support the RFC determination.

Lastly, Plaintiff argues that substantial evidence did not support a finding that Plaintiff was capable of performing the RFC found because the ALJ erred in weighing Dr. Ho's opinion. (Dkt. No. 12 at 12 [Pl.'s Mem. of Law].) In so far as Plaintiff argues that the RFC was not supported by substantial evidence because the ALJ did not adopt Dr. Ho's medical source statement, that argument fails for the reasons stated herein.

In sum, the ALJ did not commit legal error in his assessment of Dr. Ho's opinion. The ALJ considered the appropriate factors and explained the basis for his decision not to grant Dr. Ho's opinion controlling weight. The ALJ provided good reasons for affording her opinion lesser weight than Dr. Rosenfeld's opinion; namely, Dr. Ho's opinion was not consistent with clinical findings, her opinion was not supported by objective findings or by other medical sources. Although Plaintiff contends that the evidence supported his assertions, the evidence, as outlined above, could reasonably be read to support the ALJ's determination. Therefore, it is recommended that the ALJ's assessment of Dr. Ho's opinion be upheld.

## B. The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly

and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a), 416.929(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms; however, his statements concerning the intensity, persistence, and limiting effects of those symptoms was not entirely credible. (T. 18.)

Plaintiff argues that in making a credibility determination the ALJ failed to apply the relevant legal standards and misconstrued Plaintiff's statements. (Dkt. No. 12 at 12 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues that the ALJ relied on his own lay interpretation of objective testing in discrediting Plaintiff's subjective complaints of pain. (*Id.* at 14.)

In his credibility analysis, the ALJ stated "[d]iagnostic testing does not reflect conditions capable of producing the intensity, frequency and duration of [Plaintiff's] disabling back pain as alleged." (T. 19.) To be sure, the ALJ use of terminology is troubling. However, when the statement is read in context, it is apparent that the ALJ did not substitute his own lay opinion.

Overall, the ALJ reviewed the objective medical evidence and concluded that it did not support Plaintiff's contentions of the limiting effects of his back pain. Specifically, the ALJ relied on bone density testing that indicated minimal osteopenia, Plaintiff's conservative treatment, and the objective examination of Dr. Rosenfeld. (T. 19.) Plaintiff again argues that the objective testing revealed "significant" abnormalities; however, as stated herein, it is not enough for Plaintiff to argue that the evidence could support his position. Further, the medical record did not indicate, as Plaintiff alleges, that the objective testing revealed "significant" abnormalities. Bone density testing indicated that the lumbar spine was "minimally osteopenic, but not osteoporotic." (T. 358.) Further, the December MRI, which Plaintiff relies on in his argument, did not show "significant" abnormalities. (Dkt. No. 12 at 14 [Pl.'s Mem. of Law].) The results of the MRI revealed "annular bulge L5-S1 with minimal asymmetry to the left suggest a broad based disc herniation to the left. . . [i]t makes contact with the left S1 nerve root,

but without displacement." (T. 365.) Therefore, the ALJ did not erroneously substitute his own opinion for that of the objective medical evidence. However, even if the ALJ incorrectly interpreted the objective test results, his credibility determination was still based on substantial evidence in the record. *See Kessler v. Colvin*, 48 F. Supp. 3d 578, 595 (S.D.N.Y. 2014) ("But even if the ALJ incorrectly interpreted these records, his credibility determination still deserves deference because it clearly is based on more than just the MRI results.").

Here, the ALJ's credibility determination was supported by substantial evidence in the record. In assessing Plaintiff's credibility, the ALJ relied on Plaintiff's activities of daily living, his testimony that he worked part time, the physical examination by Dr. Rosenfeld, and Plaintiff's overall conservative treatment. (T. 18-19.) For example, Plaintiff testified, and the medical record indicated, that he was independent in all of his activities of daily living. (T. 193-194.) The ALJ properly discounted Plaintiff's assertion that his condition was disabling, because it was inconsistent with other evidence in the record. *Morris v. Comm'r of Soc. Sec.,* No. 5:12-CV-1795, 2014 WL 1451996, at *8 (N.D.N.Y. Apr. 14, 2014) ("The issue is not whether Plaintiff's limited ability to undertake normal daily activities demonstrates her ability to work. Rather, the issue is whether the ALJ properly discounted Plaintiff's testimony regarding her symptoms to the extent that it is inconsistent with other evidence."). Plaintiff also testified that he was able to work without difficulty for four days a week for two and a half hours a day. (T. 40.)

Contrary to Plaintiff's contention, the ALJ did not err in taking into consideration Plaintiff's conservative treatment history. (Dkt. No. 12 at 14 [Pl.'s Mem. of Law].) "[A] plaintiff may be deemed less credible 'if the level or frequency of treatment is

inconsistent with the level of complaints.' " *Phelps v. Commissioner of Soc. Sec.*, 1:15-CV-0499, 2016 WL 3661405, at *8 (N.D.N.Y. July 5, 2016) (quoting SSR 96-7p, 1996 WL 174186, at *8 (July 2, 1996))[2]; *Sickles v. Colvin*,12-CV-0774, 2014 W L 795978, at *22 (N.D.N.Y. Feb. 27, 2014); *Church v. Colvin*, 2016 W L 3944481, at *5 (N.D.N.Y. July 18, 2016) (determining, where the ALJ noted that the plaintiff's treatment for musculoskeletal problems was conservative insofar as the plaintiff declined injections and surgery, that the consideration was not improper as there was substantial evidence in the record to support the ALJ's finding that the plaintiff's symptoms were not as disabling as alleged); *Walker v. Colvin*, No. 3:15-CV-465, 2016 WL 4768806, at *11 (N.D.N.Y. Sept. 13, 2016).

Therefore, for the reasons stated herein, and further outlined in Defendant's brief, the ALJ's credibility determination was made in accordance with the Regulations and supported by substantial evidence; therefore, it is recommended that his credibility determination be upheld.

### C.    The ALJ's Step Five Determination

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform.  *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).  The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth

---

[2]    SSR 96-7p was superseded by SSR 16-3p on March 16, 2016.  SSR 16-3P (S.S.A. Mar. 16, 2016).

at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir. 1986).

The Second Circuit has explained that the ALJ may not solely rely on the Grids if a non-exertional limitation "has any more than a 'negligible' impact on a claimant's ability to perform the full range of work." *Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir. 2013) (quoting *Zabala v. Astrue,* 595 F.3d 402, 411 (2d Cir. 2010)). A non-exertional impairment is non-negligible "when it ... so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Zabala,* 595 F.3d at 411. Whether VE testimony is required must be determined on a "case-by-case basis." *Bapp* 802 F.2d at 605-606. Further, "the mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the [Grids]." *Id.* at 603.

Here, at step five the ALJ applied the Grids in making his determination. (T. 20-21.) The ALJ relied on the guidance of SSR 96-8p and 96-9p in concluding that Plaintiff's non-exertional impairments did not have more than a negligible impact on Plaintiff's ability to perform a full range of work and therefore reliance on the Grids was appropriate. (T. 21.)

Plaintiff argues that his non-exertional mental limitations were more than negligible because the ALJ found, at step three, that he had "moderate" difficulties in concentration, persistence, and pace. (Dkt. No. 12 at 15 [Pl.'s Mem. of Law].) Plaintiff implicitly argues that the ALJ erred in his RFC determination because the determination failed to account for "moderate" limitations in concentration, persistence, and pace. However, the analysis conducted at steps two and three of the sequential process are

not an RFC assessment.  *See* SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996);

*Huestis v. Comm'r of Soc. Sec.,* No. 2:13-CV-201, 2014 WL 4209927, at *5 (D. Vt. Aug.

25, 2014).  Therefore, the ALJ's step three determination, that Plaintiff' had "moderate"

limitations, was not an RFC analysis.  Further, the ALJ's mental RFC determination was

proper because a moderate limitation in concentration, persistence and pace does not

preclude the basic demands of unskilled work.

The Second Circuit has held that moderate limitations in work related functioning

does not significantly limit, and thus prevent, a plaintiff from performing unskilled work.

*Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who

examined [plaintiff] indicated that she had anything more than moderate limitations in

her work-related functioning, and most reported less severe limitations."); see *Whipple*

*v. Astrue*, 479 Fed.Appx. 367, 370 (2d Cir. 2012) (consultative examiners' findings that

plaintiff's depression caused moderate limitations in social functioning ultimately

supported the ALJ's determination that plaintiff was capable of performing work that

involved simple tasks and allowed for a low-stress environment); *Saxon v. Colvin*, No.

13-CV-165, 2015 WL 3937206, at *6 (W.D.N.Y. June 26, 2015) ("The ALJ considered

the functional limitations suggested by the medical evidence, including plaintiff's

moderate limitation in the ability to learn new tasks, perform complex tasks, make

appropriate decisions, relate adequately with others, and deal with stress. These

limitations are incorporated into the RFC, which limits plaintiff to simple routine tasks in

a low stress, low contact environment.").

Plaintiff then argues that the ALJ failed to account for the significant limitations

imposed by Plaintiff's pain.  (Dkt. No. 12 at 15 [Pl.'s Mem. of Law].)  However, as

discussed herein, the ALJ properly assessed Plaintiff's contentions of pain in his RFC analysis. Therefore, it is recommended that he ALJ's step five determination be upheld. The ALJ did not err at step five in relying on the Grids because Plaintiff's non-exertional impairments did not have a more than negligible effect on his ability to perform basic work demands.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:        December 8, 2016

William B. Mitchell Carter
U.S. Magistrate Judge